UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOSE DEL-ORDEN, on behalf of himself   :
and all others similarly situated,

  :

              Plaintiff,   :             Case No. 17-cv-2744(PAE)

  :

      -against-   :

BONOBOS, INC.,   :

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

Attorneys for Defendants

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS ................................................................................ 3

ARGUMENT .................................................................................................. 6

> POINT I - THE COURT CAN CONSIDER BONOBOS.COM AND ESSIG
> AFFIDAVIT OF DOMINIQUE ESSIG FOR THE PURPOSES OF
> DECIDING THIS MOTION ............................................................ 6

> POINT II - PLAINTIFF'S REQUEST FOR RELIEF IS MOOT ............................ 8

> POINT III - PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF .................. 13

>> A. Plaintiff Does Not Allege That He Was Denied Access To A "Place of
>> Public Accommodation" Owned, Leased Or Operated By Bonobos. ..... 14

>> B. Application of Unofficial Standards of "Accessibility" to Bonobos.com
>> violates Bonobos Due Process Rights. ...................................... 18

>> C. The Court Should Dismiss or Stay This Action Pursuant to the Doctrine of
>> "Primary Jurisdiction." ...................................................... 22

CONCLUSION .............................................................................................. 24

**TABLE OF AUTHORITIES**

**Cases**

Access Now v. Sw. Airlines,
   227 F. Supp. 2d 1312 (S.D. Fla. 2002) ............................................................. 16, 22

Already, LLC v. Nike, Inc.,
   568 U.S. 85 (2013) ................................................................................................. 10

Andrews v. Blick Art Materials, LLC,
   No. 17-CV-767, 2017 U.S. Dist. LEXIS 121007 (E.D.N.Y. July 31, 2017) ......................... 15n

Atl. Recording Corp. v. Project Playlist, Inc.,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ............................................................... 10, 11

Bacon v. Walgreen Co.,
   91 F. Supp. 3d 446 (E.D.N.Y. 2015) ............................................ 9, 10, 11, 12, 13n

Bitetto v. D'Angelo,
   No. 16-CV-1499, 2016 U.S. Dist. LEXIS 177482 (N.D.N.Y. Dec. 20, 2016) ...................... 15n

Bragdon v. Abbott,
   524 U.S. 624 (1998) ............................................................................................... 18

Brief v. Albert Einstein Coll. of Med.,
   423 F. App'x 88 (2d Cir. 2011) ................................................................................ 9

Brown v. Cty. of Nassau,
   736 F. Supp. 2d 602 (E.D.N.Y. 2010) ................................................................... 18

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources,
   532 U.S. 598 (2001) ............................................................................................. 13n

Camarillo v. Carrols Corp.,
   518 F.3d 153 (2d Cir. 2008) ................................................................................... 13

Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.,
   37 F.3d 12 (1st Cir. 1994) .................................................................................... 15n

Clear Channel Outdoor, Inc. v. City of N.Y.,
   594 F.3d 94 (2d Cir. 2010) ........................................................................... 9, 10, 13

Cortec Indus., Inc. v. Sum Holding L.P.,
   949 F.2d 42 (2d Cir. 1991).................................................................................. 7

Cullen v. Netflix, Inc.,
   600 F. App'x 508 (9th Cir. 2015) ..................................................................... 17

De La Rosa v. 600 Broadway Partners, LLC,
   175 F. Supp. 3d 191 (S.D.N.Y. 2016)............................................................... 10

Ellis v. Tribune TV Co.,
   443 F.3d 71 (2d Cir. 2006)................................................................................ 22

Ford v. Schering-Plough Corp.,
   145 F.3d 601 (3d Cir. 1998).............................................................................. 16

Forziano v. Indep. Grp. Home Living Program,
   613 F. App'x 15 (2d Cir. 2015) .............................................................. 9, 10, 11

Gil v. Winn-Dixie Stores, Inc.,
   No. 16-23020-Civ, 2017 U.S. Dist. LEXIS 90204 (S.D. Fla. June 12, 2017)......................... 23

Gomez v. Bang & Olufsen Am., Inc.,
   No. 1:16-cv-23801, 2017 U.S. Dist. LEXIS 15457 (S.D. Fla. Feb. 2, 2017) ........................ 16

Graves v. Finch Pruyn & Co.,
   457 F.3d 181 (2d Cir. 2006)............................................................................... 6n

Grisales v. Forex Capital Mkts. LLC,
   No. 11 Civ. 228 (NRB), 2011 U.S. Dist. LEXIS 144932(S.D.N.Y. Dec. 8, 2011)................. 8n

Kolari v. N.Y. Presbyterian Hosp.,
   455 F.3d 118 (2d Cir. 2006)............................................................................... 6n

Levesque v. CVPH Med. Ctr.,
   No. 12-CV-960 (DNH/CFH), 2015 U.S. Dist. LEXIS 46878  (N.D.N.Y. Mar. 23, 2015). ....... 8

Lockhart v. Coreas,
   No. 10-CV-1644(SJF)(ETB), 2011 U.S. Dist. LEXIS 67242 (E.D.N.Y. 2011)...................... 19

Markett v. Five Guys Enterprises, LLC,
   No. 17-cv-788 (KBF) (S.D.N.Y. July 21, 2017)................................................... 15n

iii

Meineker v. Hoyts Cinemas Corp.,
    69 Fed. App'x 19 (2d Cir. 2003)........................................................................ 18

Morgan v. Joint Admin. Bd.,
    268 F.3d 456 (7th Cir. 2001) ....................................................................... 15n

Nat'l All. for Accessability, Inc. v. Walgreen Co.,
    No. 3:10-CV-780-J-32-TEM, 2011 U.S. Dist. LEXIS 136171 (M.D. Fla. Nov. 28, 2011) ..... 10

Nat'l Ass'n of the Deaf v. Netflix, Inc.,
    869 F. Supp. 2d 196 (D. Mass. 2012) ........................................................... 15n

Nat'l Fed'n of the Blind v. Scribd Inc.,
    97 F. Supp. 3d 565 (D. Vt. 2015)................................................................. 15n

Oliver v. Ralphs Grocery Co.,
    654 F.3d 903 (9th Cir. 2011) ......................................................................... 9

Orozco v. Fresh Direct, LLC,
    No. 15-CV-8226 (VEC), 2016 U.S. Dist. LEXIS 133296, (S.D.N.Y. Sep. 27, 2016) .............. 7

Pallozzi v. Allstate Life Insurance Company,
    198 F3d 28 (1999)................................................................................ 15, 18

Parker v. Metro. Life Ins. Co.,
    121 F.3d 1006 (6th Cir. 1997) ....................................................................... 16

Pharm. Research & Mfrs. of Am. v. Walsh,
    538 U.S. 644 (2003)................................................................................. 22

Phillips v. 180 Bklyn Livingston, LLC,
    No. 17 Civ. 325 (BMC), 2017 U.S. Dist. LEXIS 75154 (E.D.N.Y. May 16, 2017) ............... 6n

Rendon v. Valleycrest Prods.,
    294 F.3d 1279 (11th Cir. 2002) ..................................................................... 16

Robles v. Dominos Pizza LLC,
    No. CV 16-06599 SJO (SPx), 2017 U.S. Dist. LEXIS 53133
    (C.D. Cal. Mar. 20, 2017) ................................................................. 19, 20, 22, 23

Rogers v. eColor Studio,
    No. 11-CV-4493 (ARR) (RER), 2013 U.S. Dist. LEXIS 28332 (E.D.N.Y. Feb. 7, 2013) ........ 7

Rome v. MTA/N.Y.C. Transit,
  97-CV-2945 (JG), 1997 U.S. Dist. LEXIS 23436 (E.D.N.Y. Nov. 18, 1997) ........................ 16

Roth v. Jennings,
  489 F.3d 499 (2d Cir. 2007)................................................................................................. 6

Shalto v. Bay of Bengal Kabob Corp.,
  No. 12-CV-920 (KAM)(VMS), 2013 U.S. Dist. LEXIS 33277 (E.D.N.Y. Feb. 6, 2013)
  adopted, in part, modified on other groups by 2013 U.S. Dist. LEXIS 31714
  (E.D.N.Y. Mar. 7, 2013) ..................................................................................................... 18

Shariff v. Beach 90th St. Realty Corp.,
  No. 11 CV 2551 (ENV)(LB), 2013 U.S. Dist. LEXIS 180185 (E.D.N.Y. Nov. 8, 2013)........ 18

Stoutenborough v. Nat'l Football League,
  59 F.3d 580, 583 (6th Cir. 1995) ....................................................................................... 16

Thomas v. West,
  No. 14 CV 4459-LTS, 2017 U.S. Dist. LEXIS 37542 (S.D.N.Y. Mar. 15, 2017) .................. 10

Twentieth Century Fox Film Corp. v. Marvel Enters.,
  220 F. Supp. 2d 289 (S.D.N.Y. 2002)................................................................................. 11

Universal City Studios v. Corley,
  273 F.3d 429 (2d Cir. 2001)............................................................................................... 8n

Van Praagh v. Gratton,
  993 F. Supp. 2d 293 (E.D.N.Y. 2014) ................................................................................ 7

Weyer v. Twentieth Century Fox Film Corp.,
  198 F.3d 1104 (9th Cir. 2000) ........................................................................................... 16

White v. Divine Invs.,
  286 F. App'x 344 (9th Cir. 2008). ...................................................................................... 19

Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,
  215 F.3d 247 (2d Cir. 2000)............................................................................................ 6, 9

**Statutes**

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4), *et seq*. ....................... 1, 6n

New York Civil Rights Law, N.Y. Civ. Rights Law § 40-c ...................................................... 1, 6n

New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq*. ..................................... 1, 6n

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. ...................... passim.

**Other Authorities**

28 C.F.R. § 36, Appendix A ........................................................................................ 18, 19, 21

28 C.F.R. § 36.104 ..................................................................................................................... 14

*ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities,* https://www.ada.gov/taman3.html (last accessed on August 11, 2017) ................. 14

U.S. Department of Justice, Advanced Notice of Proposed Rulemaking,
*Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations* (proposed July 26, 2010), https://www.regulations.gov/document?D=DOJ-CRT-2010-0005-0001 (last accessed on August 11, 2017).................................................................................................................. 19

Defendant Bonobos, Inc. ("Bonobos") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Class Action Complaint of Plaintiff Jose Del-Orden ("Plaintiff"), filed July 20, 2017 (the "Amended Complaint"), pursuant to Rules 12(b)(1) and 12(b)(6) Federal Rules of Civil Procedure ("FRCP").  For the reasons set forth below, Bonobos respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety.

## PRELIMINARY STATEMENT

Plaintiff, who identifies as "legally blind," purports to advance claims on behalf of himself and a putative nationwide class of "blind individuals" that Bonobos discriminates against individuals with disabilities in "places of public accommodation" in violation of Title III of the Americans with Disabilities Act ("Title III"), 42 U.S.C. § 12181, *et seq*., as well as, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq*., New York Civil Rights Law ("NYSCRL"), N.Y. Civ. Rights Law § 40-c, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4), *et seq*.  The gravamen of Plaintiff's claims is that Bonobos' website ("Bonobos.com" or the "Website") contains "access barriers," which Plaintiff alleges impede blind and visually-impaired users from completing an order "independently" on the Website.  These allegations are erroneous.  Unfortunately, despite being advised of the errors in his allegations, Plaintiff continues to assert frivolous claims of "inaccessibility."  His pleadings bear all the hallmarks of the serial litigation that has recently developed in this area of the law.[1] Plaintiff's claims are moot and his allegations also fail to state a claim under the law.

---

[1] Of note, Plaintiff commenced two other actions under Title III the same week he filed the original Complaint.  See Del-Orden v. Hotel De Point LLC, 17-cv-2268(DLI)(RML), filed in the EDNY on April 14, 2017 and Del-Orden v. Broadway Plaza Hotel Inc., 17-cv-2742(LGS), filed in the SDNY on April 17, 2017.  All three complaints appear to be derived from the same form complaint, with little more than the name of the defendant's website changed.  The complaints filed against Hotel De Point LLC and Broadway Plaza Hotel Inc. still contain "track change" marks in the left margin of the page indicating where the changes were made to form complaint.

In his Amended Complaint, Plaintiff tacitly concedes that the vast majority of the alleged "barriers" he identified in his original Complaint are not present on the Website.  (Indeed, many were ever contained on the Website at all.)  However, Plaintiff continues to claim that he is unable to purchase certain products on the Website using only his computer keyboard.  As is explained in the accompanying Affidavit of Bonobos Chief Experience Officer Dominique Essig ("Essig Affidavit"), Bonobos.com is designed to be navigable by a blind or visually-impaired individuals using commercially-available "screen-reading" software and a standard computer keyboard.  Further, Bonobos tested the exact product page that Plaintiff complains is inaccessible and confirmed that it contains the technical features that Plaintiff alleges are lacking.  As is demonstrated in the video simulation that Bonobos has submitted with the Essig Affidavit, a user with "screen-reader" and a standard computer keyboard can purchase the product without using a mouse.  Accordingly, Plaintiff's Amended Complaint should be dismissed as moot pursuant to FRCP Rule 12(b)(1).

The Court should also dismiss Plaintiff's Complaint pursuant to FRCP Rule 12(b)(6) for the following reasons: (1) Plaintiff does not allege that he was denied access to a "place of public accommodation" owned, leased or operated by Bonobos; (2) there are no legal standards of "accessibility" for private commercial websites such as Bonobos.com and the legal application of unofficial guidelines (including the WCAG 2.0 Recommendations) would violate Bonobos due process rights; and (3) the doctrine of "Primary Jurisdiction" requires that the Court defer to the United States Department of Justice ("DOJ"), whom Congress has delegated exclusive rulemaking authority under the ADA, and dismiss (or, in the alternative, stay) this action pending official guidance from the DOJ as to whether and to what extent private websites are covered under Title III.

### STATEMENT OF FACTS[2]

Bonobos is a brand and retailer of men's apparel.  Bonobos products are primarily sold through the company's website, Bonobos.com, on which customers can browse and order products to be shipped directly to their homes free of charge.  Bonobos.com includes a number of technical features and coding elements that are designed to facilitate the user experience for blind and visually-impaired users of the website.  (See, generally, Essig Aff.).  Bonobos has reviewed Bonobos.com and determined that the Website complies with the Level "AA" of the so-called "Web Content Accessibility Guidelines 2.0," ("WCAG 2.0 Recommendations"), although there is no legal requirement that it do so.[3]  (Id. at ¶ 4.)

Blind and visually-impaired users with most commercially-available "screen-reading" software and a standard computer keyboard are able to navigate and comprehend the pages on Bonobos.com.  (Id. at ¶ 5)  "Screen-reading" software (or "screen readers") are computer programs that interact with websites (and other programs) to provide auditory descriptions of the content on a user's computer screen.  (Id.)  Screen-readers are designed and distributed by third-party companies, not Bonobos.  (See id.)  Screen-readers vocalize the text elements on the web page and provide verbal descriptions of the non-text elements by reading hidden coding elements

---

[2] Plaintiff relies upon and cites repeatedly to Bonobos.com throughout his Amended Complaint. Therefore, the website should be deemed "incorporated by reference" into the Amended Complaint and the Court can properly consider its contents when analyzing the sufficiency of Plaintiff's claims.  (See Point I, infra.).  To facilitate this review, Bonobos has also submitted the Essig Affidavit, which explains the underlying coding elements and other functions on the website, which the Court may also consider in connection with Bonobos' jurisdictional argument that Plaintiff's claims are moot.  (See Point I, infra.)

[3] The WCAG 2.0 Recommendations are promulgated by the "Web Accessibility Initiative (WAI) of the World Wide Web Consortium (W3C)," a private entity which Plaintiff alleges is the "main international standards organization for the internet."  (See Am. Compl. at ¶ 50.)  W3C describes itself as "an international community" with a "mission is to lead the Web to its full potential."  See "About W3C," w3.org, https://www.w3.org/Consortium/ (last accessed August 9, 2017).  W3C has no authority over the parties or this Court.

within the webpage that describe that content of the images in text form (these elements are known as "alt-text").  (See id.)  A blind or visually-impaired user with a screen-reader can follow the audio descriptions to navigate a website using the keys on their computer keyboard – including the tab, spacebar and arrow keys.  (See id.)

        All images and forms (e.g., buttons and drop-down menus) on Bonobos.com are coded with "alt-text."  (Id. at ¶¶ 6, 7.)  Bonobos.com is also designed with navigational elements that assist users navigating between various parts of the website and the individual webpages using only a computer keyboard.  (Id. at ¶ 9.) Using a keyboard and guided by the screen-reader, a blind or visually-impaired user can browse the individual product pages on Bonobos.com, select menus and buttons that allow the user to customize the "color," "size," "fit" and other options for the products, and place the customized products in their virtual "shopping cart" for purchase.  (Id. at ¶ 9 and Exhibit B.)

        As an alternative to shopping for its products online, Bonobos also operates a series of "brick and mortar" showrooms that are called "Guideshops."  (See "Guideshop Locations," Bonobos.com, www.bonobos.com/guideshop (last accessed August 11, 2017)).  The services offered at Bonobos Guideshops are complimentary to those offered on Bonobos.com.  (See Am. Compl. at ¶ 19; Essig. Aff. at ¶ 15.)  At a Guideshop, Bonobos employees (known as "Guides") can help a customer browse and try on clothing and, if the customer wishes to purchase an item, the Guide can place an order on the customer's behalf on Bonobos.com.  (See Essig. Aff. at ¶ 15) The address of each of Bonobos 38 Guideshops, including the five locations within New York City, is listed in plain text on Bonobos.com, along with each location's telephone number and operating hours.  (See id.)  Bonobos also maintains a toll-free customer service telephone number, also listed on Bonobos.com, through which customers can ask questions – including questions

about navigating the website, finding a Guideshop and ordering products – to Bonobos customer service employees (known as "Ninjas").  (See id. at ¶ 16.)

Plaintiff states that he is a "legally blind" resident of Bronx County, New York, who "cannot use a computer without the assistance of screen reader software."  (See Am. Compl. at ¶¶ 16-17.)  Plaintiff does not allege that any physical "access barriers" impede his use of the services provided at Bonobos Guideshops or that he is unable to contact Bonobos via telephone. Instead, Plaintiff alleges that "in April 2017 and July 2017," he was unable to purchase a "Daily Grind Limited Addition [sic] Dress Shirt on Defendant's Website Bonobos.com in Bronx County." (Id. at ¶¶ 15-16.)  Plaintiff claims that he cannot purchase this product "independently" due to "accessibility barriers" that he alleges exist on Bonobos.com.  (Id. at ¶ 17.)  Although Plaintiff confusingly identifies a number of "access barriers" that he believes were present on the Website prior to filing the Amended Complaint, he concedes that the majority of these "barriers" are not currently found on Bonobos.com.  (Id. at ¶¶ 40-42, 48.)

The only current "access barrier" that Plaintiff alleges impedes his purchasing ability is a purported "lack of accessible forms[,] including forms that allow blind customers to specify the size, fit and color of certain items."  (Id. at ¶ 43.)  Plaintiff claims these forms can only be used with a computer mouse, which he is unable to operate.  (Id. at ¶¶ 45-47.)  While Plaintiff has not identified the type of screen-reader that he uses, Bonobos.com has reviewed the product page that Plaintiff claims to have had difficulty navigating (for the Daily Grind Limited Edition Dress Shirt) and confirmed that the page contains alt-text and navigational coding that will interact with most commercially-available screen-reading software.  (See Essig Aff. at ¶ 13.)  Further, Bonobos.com has performed a simulation on the product page using Apple's VoiceOver software (a screen-reading program that comes standard with Apple's operating systems) and a standard

computer keyboard and determined that a blind or visually-impaired user can select and purchase

the product from Bonobos.com as site existed prior to the time the Amended Complaint was filed.

(See id. ¶ Exhibit B.)

**ARGUMENT[4]**

**POINT I**

**THE COURT CAN CONSIDER BONOBOS.COM
AND THE ESSIG AFFIDAVIT FOR
THE PURPOSES OF DECIDING THIS MOTION**

For the purposes of evaluating a motion to dismiss made under FRCP Rule

12(b)(1), "the court may resolve the disputed jurisdictional fact issues by referring to evidence

outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." Zappia

Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  For the purposes

of evaluating a motion to dismiss under FRCP Rule 12(b)(6), "[d]ocuments that are attached to the

complaint or incorporated in it by reference are deemed part of the pleading and may be

considered.  In addition, even if not attached or incorporated by reference, a document 'upon which

the complaint *solely* relies and which is *integral to the complaint*' may be considered by the court

in ruling on such a motion."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in

original; internal citations omitted).  "Where plaintiff has actual notice of all the information in the

---

[4] For the same reasons discussed herein, Plaintiff's claims under the NYSHRL, the NYSCRL and
NYCHRL should also be dismissed.  See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d
Cir. 2006) ("a [New York] state-law disability-discrimination claim . . . survives or fails on the
same basis as [plaintiff's] ADA claim.").   Alternatively, the Court should decline to take
supplemental jurisdiction over Plaintiff's state and municipal law claims.  See Kolari v. N.Y.
Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("in the usual case in which all federal-law
claims are eliminated before trial, the balance of factors will point toward declining to exercise
jurisdiction over the remaining state-law claims.") (internal citations and editing marks omitted);
Phillips v. 180 Bklyn Livingston, LLC, No. 17 Civ. 325 (BMC), 2017 U.S. Dist. LEXIS 75154,
*9-10 (E.D.N.Y. May 16, 2017) (Cogan, J.) (noting that "tacking on state claims that permit
damages is effectively creating an end-run on the ADA's purpose and Congress's intent.").

movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

Courts routinely find that websites have been "incorporated by reference" into complaints that quote extensively from the site or where the allegations are so reliant upon the content of the website that the site itself is integral to the allegations in the claim.  See, e.g., Orozco v. Fresh Direct, LLC, No. 15-CV-8226 (VEC), 2016 U.S. Dist. LEXIS 133296, at *14-15 (S.D.N.Y. Sep. 27, 2016) (Caproni, J.) ("the website is not only incorporated by reference in the Complaint but is at the center of Plaintiffs' allegations, so the Court may consider the website in its totality as it existed during the relevant time period in resolving Defendants' motion to dismiss"); Van Praagh v. Gratton, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (Spatt, J.) (declining to convert motion to dismiss to motion for summary judgment, but considering website incorporated by reference into the complaint);  Rogers v. eColor Studio, No. 11-CV-4493 (ARR) (RER), 2013 U.S. Dist. LEXIS 28332, at *6 (E.D.N.Y. Feb. 7, 2013) (Ross, J.) (website incorporated by reference where "[t]he gravamen of the complaint is that Defendants tortiously infringed Plaintiff's copyright by recreating the protected work and making it available on their commercial website and on YouTube.").

Plaintiff relies upon and repeatedly cites to Bonobos.com throughout his Amended Complaint.  (See, e.g., Am. Compl. at ¶¶ 1, 3, 6-8, 10, 15, 17, 19-20, 24-26, 32-36, 40-53). Plaintiff's allegations also directly pertain to the coding elements on the Website, which he must have reviewed to prepare his Amended Complaint.  (Id. at ¶¶ 40-50.)  Plaintiff even inserts an image of an individual webpage on Bonobos.com into a numbered paragraph in the Amended Complaint.  (See id. at ¶ 44.)  Therefore, Bonobos.com has either been explicitly incorporated by

reference into the Amended Complaint or become so integral to the claims that it must be considered by the Court when evaluating Bonobos' motion to dismiss. The Court should independently review Bonobos.com when evaluating the continuing viability of Plaintiff's claims under Rule 12(b)(1) and the sufficiency of his allegations under Rule 12(b)(6). To facilitate the Court's review of the Website, Bonobos submits an affidavit of its Chief Experience Officer to summarize the underlying coding on Bonobos.com and to explain the functionality of that code as it relates to Plaintiff's allegations of inaccessibility.[5] The Court can also consider this affidavit in support of Bonobos' jurisdictional argument that Plaintiff's claims are moot. See Zappia Middle E. Constr. Co., 215 F.3d at 253.

## POINT II

### PLAINTIFF'S REQUEST FOR RELIEF IS MOOT

Longstanding judicial principles hold that a lawsuit is "moot" and must be dismissed when there is no "case or controversy" over which the court can adjudicate. "When the plaintiff has been provided with some type of interim relief, [or when] an event occurs that eliminates the effect of defendant's actions, or there is no reasonable expectation that the alleged offense will occur again, the plaintiff lacks a legally cognizable interest in the outcome" of a case. Levesque v. CVPH Med. Ctr., No. 12-CV-960 (DNH/CFH), 2015 U.S. Dist. LEXIS 46878, at *7-

---

[5] The Affidavit, which interprets the coding language of the website, is the functional equivalent of a foreign language translation, which courts regularly take judicial notice of for purposes of deciding motions to dismiss. See, e.g., Grisales v. Forex Capital Mkts. LLC, No. 11 Civ. 228 (NRB), 2011 U.S. Dist. LEXIS 144932, at *6 n.7 (S.D.N.Y. Dec. 8, 2011) (Buchwald, J.) ("A certified English translation of the mixed English and Spanish communications, which are attached to the complaint in an exhibit, is provided in an exhibit to a declaration filed on the record in support of [defendant's] motion to dismiss and is cognizable in proceeding under Rule 12(b) (1). We note that we can also take judicial notice of this uncontested translation in proceeding under Rule 12 (b) (6)."). See also Universal City Studios v. Corley, 273 F.3d 429, 438-39 (2d Cir. 2001) (explaining that code is written in various computer languages that must be translated to be comprehensible).

8 (N.D.N.Y. Mar. 23, 2015).  "In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy."  See Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013).

   The Second Circuit has held that a defendant's voluntary, post-suit conduct can moot claims for injunctive relief if: "(1) there is no reasonable expectation that the alleged violation will recur[,] and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation[.]"  Clear Channel Outdoor, Inc. v. City of N.Y., 594 F.3d 94, 110 (2d Cir. 2010).  Title III of the ADA allows only for injunctive relief, not monetary damages.  Therefore, a Title III claim can become moot if the defendant remedies the access barrier at issue during the course of the litigation.  Brief v. Albert Einstein Coll. of Med., 423 F. App'x 88, 90 (2d Cir. 2011) ("claim under Title III of the ADA is also moot because that statute allows only for injunctive relief."); Bacon v. Walgreen Co., 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (Bianco, J.) ("[A] claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation.").  See also Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011) ("a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim.").

   Conclusory allegations that the defendant will reinstate an alleged access barrier at some point in the future are not sufficient to establish a reasonable expectation of recurrent violation.  Clear Channel, 594 F.3d at 110; Forziano v. Indep. Grp. Home Living Program, 613 F. App'x 15, 17 (2d Cir. 2015) ("speculative harm is insufficient to confer standing on the plaintiffs"); Bacon, 91 F. Supp 3d at 452 ("plaintiff asks this Court to issue an injunction based upon the mere possibility that, five years from now, defendant may re-carpet the exit passageway . . . These concerns are purely speculative and conjectural.")  Courts also presume that there is no reasonable

expectation of recurrence where a defendant has performed structural changes that resolve the alleged accessibility barriers. See Thomas v. West, No. 14 CV 4459-LTS, 2017 U.S. Dist. LEXIS 37542, at *29 (S.D.N.Y. Mar. 15, 2017) (Swain, J.) ("Defendants have made permanent structural alterations to Store #143, making recurrence of the alleged violations highly unlikely.  Defendants are therefore entitled to judgment as a matter of law dismissing these claims regarding already-remediated conditions as moot."); De La Rosa v. 600 Broadway Partners, LLC, 175 F. Supp. 3d 191, 203 (S.D.N.Y. 2016) (Gardephe, J.) ("Given that modification of the sales counter likely required some expense, and that there would be no apparent benefit to returning it to its prior state, the Court concludes that Plaintiff's claim is moot as to the sales counter.")  This is true even where the changes were made solely in response to the allegations in the lawsuit. See Bacon, 91 F. Supp 3d at 452.  See also Nat'l All. for Accessability, Inc. v. Walgreen Co., No. 3:10-CV-780-J-32-TEM, 2011 U.S. Dist. LEXIS 136171, at *9 (M.D. Fla. Nov. 28, 2011) ("although the repairs were made in response to this lawsuit, Walgreens appears to have genuinely attempted to comply with the law.").

The Court must review for mootness based on the allegations in the Amended Complaint, which have superseded those asserted in the original pleading. Forziano, 613 F. App'x at 17 ("Plaintiffs also argue that the district court erred by considering their injuries at the time of the amended complaint instead of the original complaint . . . . This argument is without merit. The district court properly assessed the plaintiffs' standing to request an injunction based on the amended complaint, which 'superseded the original, and rendered it of no legal effect.'") (internal citation omitted).  Further, the Court can and should independently review Bonobos.com and consider its current functionality to determine if Plaintiff's claims remain viable. See, e.g., Clear Channel, 594 F.3d at 110 (reviewing "interim relief or events") (emphasis added); Atl. Recording

10

Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009) (Chin, J.) ("Some of the facts are drawn from the Court's own review of the Website.  Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss."); Twentieth Century Fox Film Corp. v. Marvel Enters., 220 F. Supp. 2d 289, 296 n.9 (S.D.N.Y. 2002) (Schwartz, J.) ("In an effort to take into account all facts that could support Marvel's [counter-]claims, the Court considers the content of the web sites at the time the instant motion was filed, as well as on the date of this Order." (internal citation to the record omitted)).

In his Amended Complaint, Plaintiff continues to assert that Bonobos.com contains "access barriers that prevent the free and full use" of Bonobos.com by "Plaintiff and blind persons using keyboards and screen reading software."  (Am. Compl. at ¶ 40.)  While he carries over his list of alleged "access barriers" from his initial complaint (compare Am. Compl. ¶ 40 with Complaint at ¶ 40), Plaintiff also concedes that the majority of these "barriers" were not present at the time the Amended Complaint was filed.  (See Am. Compl. at ¶ 43 ("After Plaintiff filed the initial complaint, Defendant modified its website and added certain accessible features such as alternative text and navigation links."), ¶ 41 (referring to lack of "alt-text" in the past tense), ¶ 42 (same regarding allegation of "lack of navigation links"), ¶ 43 (referring to "the time the initial complaint was filed," but stating that Bonobos "recently improved its website").)  However, the presence or absence of these alleged "barriers" at any time prior to Plaintiff filing the Amended Complaint is of no accord; the relevant inquiry for the purposes of determining mootness is limited to those "access barriers" that Plaintiff alleges are still present on the website.  See Forziano, 613 F. App'x at 17.

The only remaining "barrier" that Plaintiff identifies is an alleged lack of "accessible forms," which he claims impedes his ability to purchase Bonobos products using only

his computer keyboard and screen-reading software.  (See Am. Compl. at ¶¶ 43-46.)  This allegation has no basis in fact.  Bonobos.com is currently compliant with the "AA" level of compliance with the WCAG 2.0 Guidelines.  (Id. at ¶ 4.)  The menus and buttons on Bonobos.com are coded to interact with commercially-available screen-reading software.  (See Essig Aff. at ¶ 7.)  Bonobos.com is also fully navigable by a user with a computer keyboard.  (See id. at ¶ 9.)  Bonobos has prepared a simulation using to demonstrate how a visually-impaired user with commercially-available screen-reading software can use a keyboard to purchase the exact product Plaintiff claims he cannot buy because it requires the use of a mouse.  (See id. at Exhibit B.)  The simulation reflects the functionality of the product web page as it existed prior to Plaintiff's filing of the Amended Complaint.  (Id. at ¶ 13.)  The Website also contains a number of other elements and functions that are designed to facilitate the use and comprehension of the Website by blind and visually-impaired users.  (See, generally, id.)

Bonobos has absolutely no incentive to remove the underlying coding that permits screen-reading software to interact with the content on Bonobos.com.  (See id. at ¶ 14.).  Bonobos believes it is important to provide access to its products to all individuals with disabilities and has never intentionally acted to deprive a disabled individual of such access.  Bonobos.com is committed to maintaining a website that is reasonably accessible to all users.  (See id.).  Plaintiff's conclusory assertion that Bonobos.com requires "constant modification . . . to maintain the accessibility" of the Website is without merit.  The accessibility coding on Bonobos.com exists at a structural level on the Website and will apply to any new or updated pages going forward.  (See id.)

In its current form, which was in existence at the time Plaintiff filed his Amended Complaint, Bonobos.com contained elements and functions that already satisfied the request for

12

relief Plaintiff seeks in his Amended Complaint.  Accordingly, Plaintiff's claims are moot and this

Court, lacking the subject matter jurisdiction necessary to proceed, should dismiss Plaintiff's

Amended Complaint in its entirety.[6]

### POINT III

### <u>PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF</u>

To state a claim of disability discrimination under Title III, a plaintiff must allege:

(1) that he is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or

operates a place of public accommodation as defined by Title III; and (3) that the defendant

discriminated against plaintiff by denying him "a full and equal opportunity" to enjoy the goods

and services provided by the defendant in the "place of public accommodation."   <u>Camarillo v.

Carrols Corp.</u>, 518 F.3d 153, 156 (2d Cir. 2008).

Solely for the purposes of this motion, Bonobos will assume that Plaintiff's

allegation that he is "legally blind" constitutes a disability within the meaning of the ADA.

However, Plaintiff fails to properly plead that he was denied access to a "place of public

accommodation" owned, leased or operated by Bonobos.  Bonobos.com is not considered such a

"place" under the law.  Further, even if the Court were to find that Bonobos.com is covered by

Title III, there are no official rules, regulations or guidelines from the DOJ setting forth the means

by which Bonobos can design its website to comply with Title III.  Application of any unofficial

---

[6] Because Plaintiff's claims are moot, he is not entitled to an award of attorney's fees because he is not a "prevailing party" as defined by the ADA and interpreted by the courts.  <u>See</u> 42 USCS § 12205; <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources</u>, 532 U.S. 598, 605 (2001) (under the ADA, "prevailing party" requires that a plaintiff receive a judgment on the merits or a court-ordered consent decree. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.").  <u>See</u>, <u>e.g.</u>, <u>Bacon</u>, 91 F. Supp. 3d at 454 ("Plaintiff has not been successful in seeking a judgment on the merits, because his [Title III] claims are now moot [because of Defendant's post-suit remediation].  Under <u>Buckhannon</u>, therefore, plaintiff is not the prevailing party.").

standards – including the WCAG 2.0 Recommendations – would violate Bonobos' due process rights.  Accordingly, pursuant to the judicial doctrine of "Primary Jurisdiction," the Court should dismiss Plaintiff's claims or stay this action pending official rulemaking from the DOJ pertaining to "web-accessibility."

**A.  Plaintiff Does Not Allege That He Was Denied Access To A "Place of Public Accommodation" Owned, Leased Or Operated By Bonobos.**

Title III sets forth only twelve specific categories of "private entities" that are "considered public accommodations for purposes of [Title III], if the operations of such entities affect commerce."  See 42 U.S.C. § 12181(7).  Though the businesses identified in the statute are diverse, they share a notable common feature: each is associated with a "brick and mortar" structure that individuals can physically access.  See id.  The list does not include – explicitly or by inference – any mention of websites or other "non-physical" locations.  The DOJ considers the categories of "facilities" set forth in § 12181(7) to be an exhaustive list of "places of public accommodation" under Title III.  See ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities, publicly available at https://www.ada.gov/taman3.html (last accessed August 11, 2017) ("Can a facility be considered a place of public accommodation if it does not fall under one of these 12 categories? No, the 12 categories are an exhaustive list.  However, within each category the examples given are just illustrations.").  Moreover, the DOJ's definition of "facility" leaves no doubt that the term was meant to apply only to physical locations.  See 28 C.F.R. § 36.104 ("Facility means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.").

Neither the Supreme Court nor the Second Circuit has addressed the issue of whether, and to what extent, a "place of public accommodation" regulated by Title III includes non-physical or virtual spaces such as websites.  The most analogous decision from the Second Circuit is the case of <u>Pallozzi v. Allstate Life Insurance Company</u>, 198 F3d 28 (1999), in which the Circuit Court, relying on the explicit safe harbor provision for insurance contained in 42 U.S.C. § 12201(c), found only that Title III "does regulate the sale of insurance policies in insurance offices."  <u>Id.</u> at 33.  While the Court stated in *dicta* that Title III's statutory language "suggests . . . that the statute was meant to guarantee . . . more than mere physical access" to a "place of public accommodation," this is hardly an endorsement for expanding Title III's reach beyond the reasonable and logical boundaries of the statutory and regulatory text.[7]  While the narrow holding in <u>Pallozzi</u> is only of arguable relevance to the question presented here, the decision does suggest that the Second Circuit is, above all else, concerned with the plain meaning of the statutory text of Title III.  That text does not support extending Title III's provisions to non-physical spaces and websites such as Bonobos.com.

---

[7] The First and Seventh Circuits, in cases which also dealt with the narrow issue of insurance policies, have also held that such policies need not be provided in the physical facility of the insurance office to be covered by Title III.  <u>See</u> <u>Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.</u>, 37 F.3d 12, 19 (1st Cir. 1994); <u>Morgan v. Joint Admin. Bd.</u>, 268 F.3d 456, 459 (7th Cir. 2001).  Recently, district courts in the Southern and Eastern Districts of New York have erroneously extended these decisions to hold that Title III encompasses wholly non-physical spaces, such as websites.  <u>See</u> <u>Andrews v. Blick Art Materials, LLC,</u> No. 17-CV-767, 2017 U.S. Dist. LEXIS 121007 (E.D.N.Y. July 31, 2017) (Weinstein, J.); <u>Markett v. Five Guys Enterprises, LLC</u>, No. 17-cv-788 (KBF) (S.D.N.Y. July 21, 2017) (Forrest, J.).  <u>See</u> <u>also</u> <u>Bitetto v. D'Angelo</u>, No. 16-CV-1499, 2016 U.S. Dist. LEXIS 177482, at *4 (N.D.N.Y. Dec. 20, 2016) (noting that the issue of website accessibility was one of first impression in the Circuit); <u>Nat'l Fed'n of the Blind v. Scribd Inc.</u>, 97 F. Supp. 3d 565, 576 (D. Vt. 2015) (noting that there was no Second Circuit precedent and relying on <u>Nat'l Ass'n of the Deaf v. Netflix, Inc.</u>, 869 F. Supp. 2d 196, 200 (D. Mass. 2012)).

The Third, Sixth and Ninth Circuits, relying on the plain meaning of the statutory and regulatory texts, have each held that "places of public accommodation" under Title III are limited to physical facilities.  See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public accommodations' in § 12181(7) . . . All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services."); Ford v. Schering-Plough Corp., 145 F.3d 601, 614 (3d Cir. 1998) ("we do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning."); Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1010-11 (6th Cir. 1997) ("As is evident by § 12181(7), a public accommodation is a physical place and this Court has previously so held."); Stoutenborough v. Nat'l Football League, 59 F.3d 580, 583 (6th Cir. 1995) (holding that a televised broadcast of a football game was not a "place of public accommodation.").  See also Access Now v. Sw. Airlines, 227 F. Supp. 2d 1312, 1321 n.13 (S.D. Fla. 2002) ("As Congress has created the statutory defined rights under the ADA, it is the role of Congress, and not this Court, to specifically expand the ADA's definition of 'public accommodation' beyond physical, concrete places of public accommodation, to include 'virtual' places of public accommodation."); Rome v. MTA/N.Y.C. Transit, 97-CV-2945 (JG), 1997 U.S. Dist. LEXIS 23436, at *14 (E.D.N.Y. Nov. 18, 1997) ("While such reasoning may have a certain logic to it, it is contrary to the statute.") (Gleeson, J.).

Other courts, including the Eleventh Circuit, have adopted a "nexus" test, whereby the alleged non-physical barriers must prevent access to the goods and services provided by the entity in its physical "place of public accommodation" in order for Title III's provisions to apply. See Rendon v. Valleycrest Prods., 294 F.3d 1279, 1283 (11th Cir. 2002); Gomez v. Bang &

16

<u>Olufsen Am., Inc.</u>, No. 1:16-cv-23801, 2017 U.S. Dist. LEXIS 15457, at *10 (S.D. Fla. Feb. 2, 2017) ("a website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA.").  <u>See</u> <u>also</u> <u>Cullen v. Netflix, Inc.</u>, 600 F. App'x 508, 509 (9th Cir. 2015) ("Because Netflix's services are not connected to any 'actual, physical place,' Netflix is not subject to the ADA.").

   Although the crux of his allegations pertain to the alleged "inaccessibility" of Bonobos.com, Plaintiff never actually states that the Website is a "place of public accommodation" under the law.  Instead, he refers to Bonobos.com as a "service," or "benefit," or "privilege or advantage" of Bonobos or "Bonobos Stores." (<u>See</u> Am. Compl. at ¶¶ 19, 32, 57.)  The only "places of public accommodation" that Plaintiff specifically identifies in his Amended Complaint are "Bonobos Stores." (<u>See</u> <u>id.</u> at ¶¶ 19, 57.)  Plaintiff does not allege that he has been denied physical access to a Guideshop.  In fact, he never claims to have visited a Guideshop at all.[8]  He further admits that blind and visually-impaired individuals are able to shop for Bonobos' products at Guideshop and that Bonobos employees at the Guideshops can assist customers in ordering products online.  (<u>Id.</u> at ¶¶ 47, 49.)  These are the same services that are offered on Bonobos.com.  Under the nexus analysis, because Plaintiff does not plausibly allege he was denied access to a Bonobos Guideshop, Plaintiff fails to plead that he was denied a full and fair opportunity to enjoy the goods and services that Bonobos offers to the public.

---

[8] Plaintiff's claim that he is unable to find the location of a Guideshop is belied by the fact that the address of every Guideshop in the country is listed in plain text format on Bonobos.com, along with the Guideshop's phone number and operating hours.

**B. Application of Unofficial Standards of "Accessibility" to Bonobos.com violates Bonobos Due Process Rights.**

Congress delegated the exclusive authority to issue regulations to enforce Title III's accommodations requirements to the Attorney General and the DOJ.  See 42 U.S.C. § 12186(b). See also Bragdon v. Abbott, 524 U.S. 624, 646 (1998) (noting that Congress directed the DOJ "to issue implementing regulations" and "render technical assistance explaining the responsibilities of covered individuals and institutions" under the Title III); Meineker v. Hoyts Cinemas Corp., 69 Fed. App'x 19, 21 n.3 (2d Cir. 2003) ("Congress delegated to [the DOJ] responsibility for issuing regulations to enforce the mandate of Title III of the ADA").  "The DOJ's work in this regard resulted in the ADA Accessibility Guidelines ('ADAAG'), which are found at 29 C.F.R. Part 36, Appendix A, which clarify the obligations of those businesses operating places of public accommodation."  Shalto v. Bay of Bengal Kabob Corp., No. 12-CV-920 (KAM)(VMS), 2013 U.S. Dist. LEXIS 33277, at *11 (E.D.N.Y. Feb. 6, 2013) (Report and Recommendation) (Scanlon, M.J.) adopted, in part, modified on other grounds by 2013 U.S. Dist. LEXIS 31714 (E.D.N.Y. Mar. 7, 2013) (Matsumoto, J.).

In a proper Title III lawsuit, a court determines a defendant's liability based upon its compliance, or lack thereof, with the DOJ's accessibility standards.  See, e.g., Shariff v. Beach 90th St. Realty Corp., No. 11 CV 2551 (ENV) (LB), 2013 U.S. Dist. LEXIS 180185, at *8 (E.D.N.Y. Nov. 8, 2013) (Report and Recommendation) (Bloom, M.J.) ("The Court looks to [the ADAAG] to determine whether the alleged architectural barriers constitute discrimination under the ADA."); Shalto, 2013 U.S. Dist. LEXIS 33277 at *11 ("The Court will analyze whether Plaintiff's allegations of ADA violations are correct by consulting the [ADAAG]"); Brown v. Cty. of Nassau, 736 F. Supp. 2d 602, 611 (E.D.N.Y. 2010) ("Whether a facility is accessible is

determined by whether the facility complies with either the Uniform Federal Accessibility

Standards (UFAS) or the ADAAG.") (Bianco, J.).  As at least one other Circuit Court has noted:

> No court has ever held that a Title III discrimination action based on
> the design of a public accommodation may be maintained in the
> absence of an ADAAG violation, nor does the text of the statute
> support such a reading.

White v. Divine Invs., 286 F. App'x 344, 346 (9th Cir. 2008).  Failure to identify the alleged

violation of the ADAAG is grounds for dismissal.  See Lockhart v. Coreas, No. 10-CV-1644(SJF)

(ETB), 2011 U.S. Dist. LEXIS 67242, at *18-19 (E.D.N.Y. 2011) (Feurstein, J.).

Plaintiff does point to any DOJ rule that calls for the implementation of "alt-text"

or requires the use of "navigation links."  He similarly cites to no official regulations for what

constitutes "adequate prompting and labeling" or "accessible forms."  The explanation for this

failure is simple, no such regulations exist.  In a 2010 Advanced Notice of Proposed Rulemaking

("2010 ANPR") DOJ announced that it was "considering revising the regulations implementing

[Title III] in order to establish requirements for making the goods, services, facilities, privileges,

accommodations, or advantages offered by public accommodations via the Internet . . . accessible

to individuals with disabilities."  See Nondiscrimination on the Basis of Disability: Accessibility

of Web Information and Services of State and Local Government Entities and Public

Accommodations, 75 Fed. Reg. 43460 (proposed July 26, 2010).  However, when the newest

version of the ADAAG was published in 2011, the DOJ conceded that it was "unable to issue

specific regulatory language on website accessibility."  See 28 C.F.R. Part 36, Appendix A.

Although it promised at that time "to engage in rulemaking relating to website accessibility under

the ADA in the near future," Id., the DOJ has never proposed another rule for the regulation of

private websites under Title III.  As a District Court for the Central District of California recently

opined: "[a]lmost seven years have transpired since the DOJ first posed these questions [of web

accessibility under the ADA] to the interested public, but the public has yet to receive a satisfactory answer." Robles v. Dominos Pizza LLC, No. CV 16-06599 SJO (SPx), 2017 U.S. Dist. LEXIS 53133, at *24 (C.D. Cal. Mar. 20, 2017).

In the 2010 ANPR, DOJ recognized that "inconsistent court decisions, differing standards for determining Web accessibility, and repeated calls for [the DOJ] action indicate remaining uncertainty regarding the applicability of the ADA to Web sites of entities covered by [Title III]." See id. at § III(B)(iii).  The DOJ stated that if websites were to be regulated by Title III, there would be a need to "make clear to entities covered by the ADA their obligations to make their Web sites accessible." Id.  The DOJ further recognized that compliance with any such regulations would be a costly and burdensome obligation to impose on businesses.  The DOJ proposed adopting a six-month delay in enforcement of any new regulations for newly created websites, and a two-year delay for websites in existence at the time the final rule was published. See id. at § IV(D).  As Robles court recognized, "a lack of formal guidance in this complex regulatory arena places those subject to Title III in the precarious position of having to speculate which accessibility criteria their websites and mobile applications must meet." See Robles, 2017 U.S. Dist. LEXIS 53133, at *22-23.

Bonobos has had no notice that its websites was covered by Title III and has been given no technical guidance from the DOJ as to what constitutes "compliance" under the law. In the absence of formal guidance, Plaintiff seeks to hold Bonobos.com to standards set forth in the WCAG 2.0 Recommendations, which have not been subject to the same rigorous notice and comment period and agency review that is legally required for agencies to adopt binding regulations.  Notably, WCAG 2.0's authors represent that "comments received on the WCAG 2.0 Recommendation cannot result in changes to this version of the guidelines and that "[t]he Working

20

Group does not plan to make formal responses to comments." (See WCAG 2.0 Recommendations.) The authors are also free to amend the "guidelines," without notice or comment, at any point in the future. (See id.)

Moreover, by their very terms, the WCAG 2.0 Recommendations are both under-inclusive and over-expansive as compared to Title III's purpose of eliminating disability discrimination in places of public accommodation. The authors admit that the guidelines "are not able to address the needs of people with all types, degrees, and combinations of disability." (See id.) The authors further state that the WCAG 2.0 is intended to make web content "more usable by older individuals with changing abilities due to aging and often improve usability for users in general" regardless of the user's disability or lack thereof. (See id.)

The WCAG 2.0 Recommendations also were not drafted with the specificity necessary for binding technical regulations. The document is subdivided into vague and aspirational categories, such as "Principles," "Guidelines," "Success Criteria" and "Sufficient and Advisory Techniques." (See id.) By comparison, the ADAAG contains over 200 pages of technical guidance for a private entity to follow in order to comply with its obligations under the ADA. See 28 C.F.R. Part 36, Appendix A. While, the Recommendations "encourage" websites to "view and apply all layers that they are able to, including the advisory techniques, in order to best address the needs of the widest possible range of users," the authors concede that even if content conforms to the highest level of the recommendations – the "AAA" conformance level – the website will still not be fully "accessible." (See WCAG 2.0 Recommendations.).

Despite all of this, Plaintiff demands that the Court apply the WCAG 2.0 Recommendations to assess whether Bonobos.com violates the law. This was plainly not the purpose of the Recommendations' authors in drafting the "guidelines," nor would application of

the Recommendations be consistent with the stated purpose of the ADA.  More importantly,

Bonobos has had no notice that it would be required to adhere to the WCAG 2.0 Recommendations

and has not been given any technical guidance from the DOJ regarding how to do so.  The Court

should decline Plaintiff's invitation to violate Bonobos' due process rights in such a manner.  <u>See</u>

<u>Robles</u>, 2017 U.S. Dist. LEXIS 53133, at *17 ("Plaintiff seeks to impose on all regulated persons

and entities a requirement that they 'comply with the WCAG 2.0 Guidelines' without specifying

a particular level of success criteria and without the DOJ offering meaningful guidance on this

topic. This request flies in the face of due process.") (internal citations omitted).

### C.  The Court Should Dismiss or Stay This Action Pursuant to the Doctrine of "Primary Jurisdiction."

Because of the lack of enforceable standards and regulatory guidance, this Court

should dismiss this action or stay it pursuant to the doctrine of "Primary Jurisdiction."  As the

Second Circuit has explained:

> The doctrine of primary jurisdiction is concerned with promoting
> proper relationships between the courts and administrative agencies
> charged with particular regulatory duties.  The doctrine's central
> aim is to allocate initial decision making responsibility between
> courts and agencies and to ensure that they do not work at cross-
> purposes.  Whether there should be judicial forbearance hinges
> therefore on the authority Congress delegated to the agency in the
> legislative scheme.  Recourse to the doctrine of primary
> jurisdiction is thus appropriate whenever enforcement of the claim
> requires the resolution of issues which, under a regulatory scheme,
> have been placed within the special competence of an administrative
> body.

<u>Ellis v. Tribune TV Co.</u>, 443 F.3d 71, 81 (2d Cir. 2006) (internal citations and quotation marks

omitted).  "Overall, the 'doctrine seeks to produce better informed and uniform legal rulings by

allowing courts to take advantage of an agency's specialized knowledge, expertise, and central

position within the regulatory regime.'"  <u>Id.</u> (quoting <u>Pharm. Research & Mfrs. of Am. v. Walsh</u>,

538 U.S. 644, 673 (2003) (Breyer, J., concurring)).

The California District Court's decision in <u>Robles</u> is particularly instructive here. In that action, the plaintiff claimed that Domino's Pizza maintained a website that was not accessible to blind and visually-impaired customers. Like Plaintiff here, the plaintiff in <u>Robles</u> alleged that the website was not compatible with his "screen-reading software program." The plaintiff alleges that as a result, he was unable order a pizza online to be delivered to his home. After a thorough examination of the same aborted DOJ rulemaking process discussed above, the District Court concluded the following:

> [DOJ] regulations and technical assistance are necessary for the Court to determine what obligations a regulated individual or institution must abide by in order to comply with Title III. Moreover, the Court finds the issue of web accessibility obligations to require both expertise and uniformity in administration, as demonstrated by the DOJ's multi-year campaign to issue a final rule on this subject.

<u>Id.</u> at *25-26. <u>See</u> <u>also</u> <u>Access Now v. Sw. Airlines</u>, 227 F. Supp. 2d at 1318 ("To expand the ADA to cover 'virtual' spaces would be to create new rights without well-defined standards.").

Here, Plaintiff also asks the Court to take on the regulatory role delegated exclusively to the DOJ and adopt the WCAG 2.0 Recommendations as binding upon Bonobos. The Court should not do so. Resolution of these technical issues is properly reserved for the experts at DOJ. Official regulations are the only means of establishing a uniform standard of compliance, if Title III mandates that websites must comply with the ADA at all. A sample of decisions rendered in just the past six months exemplifies the confusion that results when regulations are left for the courts to decide. <u>Compare</u> <u>Robles</u>, 2017 U.S. Dist. Lexis 53133 ("the Court, after conducting a diligent search, has been unable to locate a single case in which a court has suggested, much less held, that persons and entities subject to Title III . . . must do so in a manner that satisfies a particular WCAG conformance level.") with <u>Gil v. Winn-Dixie Stores, Inc.</u>, No. 16-23020-Civ, 2017 U.S. Dist. LEXIS 90204, at *23 (S.D. Fla. June 12, 2017) (referring to

23

the WCAG 2.0 Recommendation for the purposes of ordering remediation).  This Court should

not contribute further to that confusion.  It should dismiss this action or, in the alternative, stay it

pending DOJ's promulgation of official regulations for website accessibility.

## **CONCLUSION**

For the foregoing reasons, Bonobos respectfully requests that the Court dismiss

Plaintiff's Amended Complaint in its entirety.

Dated:  New York
        August 11, 2017

Respectfully submitted,
PADUANO & WEINTRAUB LLP

By: _Meredith Cavallaro / kn_
    Meredith Cavallaro
    Michael F. Fleming
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)

Attorneys for Defendant

24